## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LEA H. FOX,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 15-00190-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Lea H. Fox has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*    With the consent of the parties (*see* Doc. 17), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Doc. 18).

Upon consideration of the parties' briefs (Docs. 10, 14) and the administrative record (Doc. 9) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"),[1] the Court finds that the Commissioner's decision is due to be

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 19, 20).

AFFIRMED.

## I.   Background

On April 12, 2012, Fox filed applications for DIB and SSI with the Social Security Administration ("SSA"),[2] both alleging disability beginning February 2, 2012.[3]   (R. 20).   After her applications were initially denied, Fox requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on September 24, 2013.   (R. 20).   On November 20, 2013, the ALJ issued an unfavorable decision on Fox's applications, finding her "not disabled" under the Social Security Act.   (*See* R. 17 – 42).

Fox requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review.   The Commissioner's decision on Fox's applications became final when the Appeals Council denied Fox's request for review on March 16, 2015.   (R. 1 – 4).   On April 8, 2015, Fox filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.

---

[2] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program.   SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)." *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[3] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.   20 C.F.R. § 416.202–03 (2005).   For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.   42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

(Doc. 1).   *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   <u>Standard of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' "

*Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon

which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").  " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although the "claimant bears the burden of demonstrating the inability to return to [his or] her

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.   In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When, as here, "no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner…" *Ingram*, 496 F.3d at 1262.

### III.   Claims on Judicial Review

1. The ALJ "reversibly erred in failing to assign controlling weight to the opinion of [Fox]'s treating physician, Dr. Krishna Pasala, M.D."

2. The ALJ reversibly erred "in acting as both judge and physician by arbitrarily substituting her own medical opinion, without any supporting medical opinions or substantial evidence, for the opinion of a medical professional…by finding [Fox] can perform light work."

3. The ALJ reversibly erred "in violation of 20 C.F.R. § 404.1529(b) in failing to fulfill her duty to develop the record by ordering a consultative orthopedic examination."

(Doc. 10 at 1 – 2).

# IV.   Analysis

At Step One, the ALJ determined that Fox had "not engaged in substantial gainful activity since February 2, 2012, the alleged disability onset date…" (R. 23). At Step Two, the ALJ determined that Fox had the following severe impairments: multi-level degenerative disc disease of the cervical spine, borderline personality disorder, major depressive disorder, and opioid dependence. (R. 23). At Step Three, the ALJ found that Fox did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the Listing of Impairments. (R. 30).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her

prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Fox had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b)[6] except [she] cannot perform overhead reaching bilaterally, she can perform only occasional pushing and pulling with the upper extremities, she is precluded from working with ladders, ropes, or scaffolds, at unprotected heights, and around dangerous equipment, she cannot operate a commercial vehicle, she is able to attend and concentrate for two hours at one time before needing a break, she is able to adapt to occasional changes in work settings and routines, she is able to understand, remember, and carry out short, simple work instructions and able to make judgments regarding simple work-related decisions but detailed work instructions are precluded, she cannot interact with the public, co-workers, and supervisors more than occasionally, and her time off tasks could be accommodated by normal breaks." (R. 32). Based on this RFC, the ALJ determined that Fox was "unable to perform any of her past relevant work…" (R. 40). At Step Five, the ALJ then determined that there exist significant numbers of jobs in the national economy that Fox can perform given her RFC, age,

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification …has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

education, and work experience – specifically, mail clerk/sorter, house sitter, and assembler of small products.  (R. 41 – 42).  Thus, the ALJ found that Fox was not disabled under the Social Security Act.  (R. 42).

### A.    Claim 1

Evidence considered by the Commissioner in making a disability determination may include medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2).  " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians."  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's

specialization.    These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240.  *Accord, e.g., Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).  However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished)

(quoting 20 C.F.R. § 404.1502).  "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' "  *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."  *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.  Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

Fox argues that the ALJ reversibly erred in assigning less than substantial weight to the opinion of treating physician Dr. Pasala, presented in a Clinical Assessment of Pain Form dated September 12, 2013 (R. 1025 – 1026 [SSA Ex. 33F]).  The ALJ summarized Dr. Pasala's opinion as follows:

On September 12, 2013, the claimant's primary care physician, Dr. Krishna Pasala, completed a Clinical Assessment of Pain Form on the claimant's behalf. In that form, Dr. Pasala stated that she had been treating the claimant for six months for cervical disc herniation. Dr. Pasala opined that the claimant's pain would distract the claimant from adequately performing daily activities or work, and that physical activity, such as walking, standing, bending, stooping, moving of extremities, etc., would greatly increase the claimant's level of pain and cause distraction from task or total abandonment of task. Dr. Pasala further opined that the claimant's pain and/or drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattention, or drowsiness. Finally, Dr. Pasala opined that the claimant was unable to engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to her work routine due to symptoms of her disease or medical problems. (Exhibit 33F).

(R. 27). Fulfilling the requirement that she "state with particularity the weight given to [Dr. Pasala's] medical opinions and the reasons therefor[,]" *Winschel*, 631 F.3d at 1179, the ALJ "assigned those opinions little evidentiary weight," explaining:

The undersigned notes that the claimant's pain was a factor in limiting the claimant to the performance of simple, unskilled work. However, Dr. Pasala's opinions of the severity of the claimant's pain are not supported by her own clinical examination findings or by the other objective medical evidence of record. Dr. Pasala's treatment notes all show that the claimant had normal range of motion on physical examination that was limited only by her complaints of pain. This is a subjective factor not an objective finding. On April 17, 2013, Dr. Pasala noted that the claimant had neck pain, but that she was "negative for back pain, joint pain, joint swelling and muscle weakness." Dr. Pasala's treatment note for that visit shows no pain anywhere on physical examination of the claimant. On June 12, 2013, the claimant complained of back pain, joint pain, and neck pain, but her physical examination show [sic] no clinical findings to corroborate said complaints of pain. It seems reasonable to expect that Dr. Pasala's treatment notes and particularly her recorded clinical examination findings would reflect severe abnormalities given the

claimant's allegation of pain so severe and debilitating that she is unable to work. (Exhibit 30F [R. 987 – 1022]). Dr. Pasala's treatment records contain essentially no significant abnormal objective medical findings to support an allegation of pain of such severity as to be distracting to the adequate performance of daily activities or work or that would cause the claimant to miss more than two days of work per month.

Dr. Pasala's opinions in the pain form are also unsupported by the other objective medical evidence of record. For example, MRI and CT scans of the claimant's cervical spine have shown that the claimant's cervical degenerative disc disease is no more than mild to moderate in nature and the imaging studies have failed to document the existence of any significant neural foraminal stenosis or nerve root compression. (Exhibits 8F at pages 100 [R. 553] and 139 [R. 592]; and 31F [R. 1023]). Likewise, physical examinations by the claimant's other treating physicians have failed to document clinical findings to indicate severe pain or functional limitation. Dr. Dempsey's physical examinations of the claimant from September 2012 through June 2013 showed no more than mildly diminished range of motion in the claimant's cervical spine. All other aspects of his physical examinations of the claimant were consistently normal within that time period. Moreover, on November 19, 2012, Dr. Dempsey stated that the claimant's pain was not in line with what he was seeing on the imaging studies. (Exhibits 22F [R. 903 – 908] and 27F [R. 915 – 926]).

(R. 35).

Thus, the ALJ expressly determined that Dr. Pasala's opinions were (1) inconsistent with her own medical records and (2) not bolstered by the evidence, pointing to specific portions of the record in explaining each of these determinations. Fox agrees that these were the ALJ's reasons for rejecting the opinion. (*See* Doc. 10 at 3 ("The Administrative Law Judge stated that the opinion of Dr. Pasala was not supported by his own clinical examination findings or by the other objective medical evidence of record." (citing R. 35)). Though either one of these reasons, standing alone, would provide sufficient "good cause" to assign less

than substantial or considerable weight to the opinion, *see Winschel*, 631 F.3d at 1179, Fox addresses only the latter in her brief, claiming that the opinion "is supported by the objective medical evidence of record."[7]  (Doc. 10 at 3).   Even assuming that this is true, Fox's failure to contest the ALJ's other reason for discounting the opinion is in itself fatal to this claim of error.[8]

Regardless, none of "the objective medical evidence of record" Fox cites in support of Claim 1 gives the Court reason to question the ALJ's articulated good cause for rejecting Dr. Pasala's opinion.  At most, the evidence Fox cites shows some history of pain.  However, the ALJ was rejecting Dr. Pasala's opinions as to "the severity of [Fox]'s pain," not the existence of that pain. The ALJ correctly observed

---

[7] Fox's failure to address the inconsistency of Dr. Pasala's opinion with her own treatment notes is confirmed by the fact that, despite summarizing the "objective medical evidence of record" for almost three pages, she never once cites to any of Dr. Pasala's treatment notes, located at SSA Exhibit 30F (R. 987 – 1022).  (*See* Doc. 10 at 4 – 6).

[8] In an appeal to the Eleventh Circuit Court of Appeals, "[t]o obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince [the court] that every stated ground for the judgment against him is incorrect. When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).   This Court does not hesitate to apply such a rule when reviewing a final decision of the Commissioner under § 405(g), often characterized as a "Social Security appeal."   While this Court has a duty not "to rubber stamp the administrative decisions that come before" it, it is not the Court's duty to "conduct a de novo proceeding…" *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam).  Given that this Court must "give substantial deference to the Commissioner's decision[,]"  *e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (per curiam), it is the claimant's burden to set forth specific reasons why such deference should not be given.  *See also Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present … [A]s a general rule, our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." (quotation omitted)).

that Dr. Pasala's treatment notes "contain essentially no significant abnormal objective medical findings," instead showing "normal range of motion on physical examination that was limited only by [Fox's] complaints of pain."[9]  *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. Mar. 23, 2007) (per curiam) (unpublished) ("Two factors that may weigh in favor of discounting a treating physician's opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints of pain." (citing *Crawford*, 363 F.3d at 1159)); Social Security Ruling 96-2P, 1996 WL 374188 (July 2, 1996) ("The adjudicator must find that the treating source's medical opinion is 'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion … Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion **also** must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." (emphasis added)).   Moreover, as the ALJ correctly noted, Dr. Pasala's opinions were inconsistent with the treatment notes and opinions of Dr. Dempsey, another of Fox's treating physicians.  As the Commissioner's brief correctly notes (*see* Doc. 14 at 9), between August 2012 and June 2013, Dr. Dempsey consistently noted Fox as having a full range of motion in her cervical spine, interspersed with

---

[9] When asked to provide "any clinical or laboratory findings to support" her opinions, Dr. Pasala cited only an "MRI of cervical spine" from "2/2012."  (R. 1025).  While this MRI did show some cervical abnormality ("C5-C6, broad based disc bulge and C6-7, right central disk extrusion"), it was performed at a hospital emergency room by another physician on February 23, 2012, over a year before Dr. Pasala first began treating Fox.  (R. 545, 553).

occasional diagnoses of "mildly diminished" (75%) range of motion.   Dr. Dempsey also opined that Fox's "pain was not in line with what we are seeing on imaging studies."  (R. 923).  In sum, substantial evidence supports the ALJ's decision to assign little weight to Dr. Pasala's opinions.

For these reasons, the Court **OVERRULES** Fox's assertions of reversible error in Claim 1.

## B.     Claim 2

In Claim 2, Fox asserts that, because the ALJ did not assign controlling weight to Dr. Pasala's opinion, and assigned only some weight to the opinions of a state agency medical consultant, the ALJ's RFC "does not fully reflect the opinion and limitations of [those physicians], and thus, is not based on substantial evidence." (Doc. 10 at 9).  Fox also asserts the ALJ erred because she "merely chose the limitations that she thought to be relevant without establishing a link between the medical evidence of record and the adopted" RFC.  (*Id*.).  The Court construes these arguments as asserting (1) the ALJ is required to adopt at least one medical opinion in formulating an RFC, and (2) the ALJ did not sufficiently show her work in formulating Fox's RFC.

The Court rejects both assertions. While the Social Security regulations require ALJs to consider all medical opinions in the record when making a disability determination, *see* 20 C.F.R. §§ 404.1527(b) & 416.927(b), "[n]othing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision—indeed, an ALJ may make a disability determination without

any medical opinion in the record." *Hale v. Colvin*, Civil Action No. 14-00222-CG-N, 2015 WL 3397939, at *11 (S.D. Ala. Apr. 24, 2015) (Nelson, M.J.), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015) (Granade, J.). *See also Packer v. Astrue*, Civil Action No. 11-0084-CG-N, 2013 WL 593497, at *3 (S.D. Ala. Feb. 14, 2013) (Granade, J.) ("[T]he ALJ is not precluded from making a proper RFC determination in the absence of an opinion from an acceptable medical source." (quotation omitted)), *aff'd*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890 (11th Cir. Oct. 29, 2013) (per curiam) (unpublished); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (quotation omitted)); 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)); 20 C.F.R. §§ 404.1546 & 416.946 ("If your case is at the administrative law judge hearing level … , the administrative law judge … is responsible for assessing your residual functional capacity."). The ALJ properly assigned little weight to Dr. Pasala's opinion, *see supra*, and Fox has asserted no error in the weight assigned to the state agency consultant's opinion.[10] Accordingly, the ALJ was not required to "fully reflect" either of those opinions in the RFC.

---

[10] Moreover, the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *E.g.,* *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (per curiam).

"A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) (per curiam). *See also Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. Mar. 23, 2007) (per curiam) (unpublished) ("The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981))). Nevertheless, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable the district court … to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation omitted). In formulating the RFC at Step Four, the ALJ thoroughly discussed and weighed the evidence of record and drew conclusions from that evidence. Apart from the weight the ALJ assigned the two above-mentioned medical opinions, Fox points to no evidence the ALJ allegedly incorrectly or insufficiently assessed. Rather, she appears to assert only that the ALJ failed to adequately show her work in applying Social Security Ruling 96-8p. However, both this Circuit and others have repeatedly rejected similar contentions that an ALJ's failure to expressly show his or her work under SSR 96-8p is automatic grounds for reversal. *See Freeman*, 220 F. App'x at 959-60 ("Freeman contends that the ALJ failed to identify her functional limitations and work-related abilities on a function-

by-function basis … While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed.  Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity.  Therefore, the ALJ complied with SSR 96–8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.  Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.' SSR 83–10."); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. Nov. 30, 2009) ("Castel argues that the ALJ reached an RFC determination without going through a function-by-function analysis. Specifically, Castel claims that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands. This argument is unfounded. []The ALJ made a determination of Castel's RFC at step four of the function-by-function analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ('DDS') reports in arriving at Castel's RFC. *See* SSR 96–8p … (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence).  The ALJ ultimately decided

that Castel was capable of medium exertion level work and thus was capable of performing past relevant work … We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).  The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions."); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. Sept. 21, 2011) (per curiam) (unpublished) ("Following [SSR 96-8p's 'function-by-function'] rubric, the ALJ fully discussed and evaluated the medical evidence, Mr. Carson's testimony, and the effect each impairment has on his daily activities. []While, the ALJ did not specifically refer to Mr. Carson's ability to walk or stand, the ALJ did limit Mr. Carson's exertional level of work to 'light work.' 'Light work' by definition limits the amount an individual can walk or stand for approximately six hours in an eight-hour work day. *See* SSR 83–10, 1983 WL 31251 (S.S.A.). Furthermore, the ALJ's thorough evaluation of Mr. Carson's case led the ALJ to adopt additional limitations to Mr. Carson's ability to perform light work. Simply because the ALJ chose not to adopt further limitations on Mr. Carson's ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations."); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and

restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed." (citing *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. Oct. 5, 2009) (per curiam) (unpublished); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. Mar. 4, 2002) (per curiam) (unpublished)); *Chavez v. Astrue*, 276 F. App'x 627, 627-28 (9th Cir. May 1, 2008) (per curiam) (unpublished) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *3."); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (rejecting claimant's contention that the ALJ's "RFC is not in the proper form" because the ALJ did not "separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull" (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's

reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense.... [W]e cannot insist on technical perfection.")))

Accordingly, the Court **OVERRULES** Fox's assertions of error in Claim 2.

### C.     Claim 3

"[T]he ALJ has a basic obligation to develop a full and fair record," *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997) (per curiam), which requires him to "order a consultative examination when such an evaluation is necessary for him to make an informed decision," *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir.1988) (internal quotation marks omitted). Where the record contains sufficient evidence to allow an informed decision, however, the duty to fully and fairly develop the record does not impose the requirement to order a consultative examination. *See Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir.2007).

*Johnson v. Comm'r, Soc. Sec. Admin.*, 618 F. App'x 544, 551 (11th Cir. July 9, 2015) (per curiam) (unpublished).  *See also* 20 C.F.R. §§ 404.1519a(b), § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to: (1) The additional evidence needed is not contained in the records of your medical sources; (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source; (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

or (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.").

Here, Fox asserts that her "diagnosis of multi-level degenerative disc disease of the cervical spine, in combination with the Administrative Law Judge assigning less than controlling weight to the opinions of [Fox]'s treating physician, triggered the Administrative Law Judge's duty to develop the record by ordering a consultative orthopedic examination." (Doc. 10 at 11). In essence, this is another way of asserting that the ALJ must accept at least one medical opinion before making a disability determination, a proposition that the Court has already rejected, *see supra*. Regardless, the record contains more than sufficient medical evidence regarding Fox's cervical spine impairments allowing for an informed decision from the ALJ, including the treatment notes of two treating physicians, Dr. Pasala and Dr. Dempsey. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("McCoy also argues that the ALJ erred by failing to develop the record on whether McCoy did, in fact, have a sustained disturbance in gross movement or gait and station. However, this argument mischaracterizes the ALJ's burden. While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. Here there was voluminous evidence documenting the effects of McCoy's Parkinson's disease and the ALJ's decision that McCoy had no sustained

disturbance in gross movement or station and gait was supported by substantial evidence." (citations omitted)).[11]

Accordingly, the Court **OVERRULES** Fox's assertions of error in Claim 3 and finds that the Commissioner's final decision is due to be **AFFIRMED**.

## V.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued March 16, 2015, denying Fox's applications for DIB and SSI benefits is **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 20th day of April 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Fox complains that her counsel "requested an orthopaedic consultative examination" but that the ALJ "did not address or otherwise evaluate" the request, either at the hearing or in her decision.  (Doc. 10 at 9 – 10).  Notwithstanding the Court's determination that the ALJ was not required to order a consultative examination, the ALJ has discretion to determine the best way to resolve any inconsistency or insufficiency in the evidence, which may include ordering a consultative examination.  *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c).